Affirmed and Opinion filed May 31, 2007













Affirmed
and Opinion filed May 31, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01089-CR

____________

 

ROBERT LEE BANARGENT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 





 

On Appeal from the 240th
District Court

Fort Bend County, Texas

Trial Court Cause No. 41,181
A

 





 

O P I N I O N

 

A jury found appellant Robert Lee Banargent guilty of aggravated
assault and found that he used a deadly weapon, namely a knife, during the
commission of the offense.  After finding three enhancement paragraphs
alleging sequential felonies to be true, the jury assessed punishment at
confinement for life in the Texas Department of Criminal Justice, Institutional
Division, and assessed a fine of $10,000.  In four issues, appellant
challenges the legal and factual sufficiency of the evidence, the admission of
recordings of telephone calls he made from jail, and the denial of his
requested jury instruction relating to the recordings.  We affirm.

I.  Factual and Procedural Background

Brenda Brent and appellant met in 1999, and at the time of
the offense, they had lived together for a little over a year and a half. 
By October 2004, their relationship was ending.  On October 29, 2004,
Brent was in their living room when appellant entered and said something. 
Brent told appellant she Adidn=t want to hear it
this morning.@  She then felt something strike her back and neck. 
She initially thought it was a fist.  When appellant stabbed her on the
side of her neck, Brent Aknew it was a knife then.@  

Appellant changed clothes and left the house, but he
returned a short time later and stabbed Brent behind her ear, on the back of
her neck, on her back, and on her arm.  According to Brent, appellant told
her that he wanted her to die.  Brent further testified that, as a result
of her injuries, she could no longer walk or use the fingers on her right hand
and could no longer go to the restroom on her own.

Zeno Alexander, a Houston Fire Department paramedic,
treated Brent at the scene. Alexander had been employed as a paramedic for nine
years and had responded to over one hundred calls for critical careCinstances of
severe trauma and life threatening emergencies.  When Alexander arrived,
appellant told him that someone had broken into the home and attacked
Brent.  Alexander testified that Brent=s clothes were
saturated with blood and there was blood on the carpet.  He also testified
that Brent=s injuries were the type that can result in death if
not treated.  Alexander was concerned about one injury close to the spine
and another close to the jugular vein.  According to Alexander, Brent=s wounds were
consistent with the use of a large-bladed knife.  On cross-examination,
Alexander testified that he had no doubt that Brent=s wounds were
inflicted by a knife.

 

Appellant was still at the house when Houston Police
Officer A.C. Holub arrived.  Appellant told Holub that someone jumped from
Brent=s closet and
attacked her.  Holub saw no signs of forced entry, and he observed that
the primary concentration of blood was in the living room.  Officer
Lorenzo Verbitsky, a crime scene investigator from the Houston Police
Department, also inspected the home and found no signs of forced entry. 
While Holub was clearing the crime scene before the paramedics removed Brent,
appellant left the house. 

Officer Daniel Quam, Detention Administrative Sergeant of
the Fort Bend County Sheriff=s Office, testified that he is involved
with technical support, which includes the jail management system, the
telephone record system, and cellular telephones.  He  oversees the
collection and copying of jail telephone calls made by inmates and is the
custodian of those records.  Quam explained that each inmate at the Fort
Bend County Jail has a specific and unique personal identification number used
to sort the calls recorded on Global Tel, Inc.=s inmate phone
recording system.  Quam is responsible for downloading calls to compact
disc for use by law enforcement.  Quam testified that he downloaded the
calls for appellant=s identification number onto a compact
disc and identified State=s Exhibit 12 as that disc.

 

Alan Bishop of Global Tel, Inc. testified that he has a
degree in electronics engineering, was a satellite communications specialist in
the United States Army, and has worked with Global Tel=s inmate phone
recording system, called the Alaser phone platform,@ from the program=s inception to the
present.  Bishop explained how the laser telephone platform works. 
Telephone calls are made from the jail on analog telephone lines.  The
calls are then stored digitally.  Bishop testified that several prompts
are used, including a prompt that informs the parties to the call that the call
may be monitored or recorded.  Postings throughout the facility also
inform the inmates that their calls may be monitored or recorded.  Before
a person receiving a call decides whether to accept it, he has been informed that
it is being recorded.  On cross-examination, Bishop testified that there
is no prompt asking either party whether they consent to the recording of the
call.[1]

Bishop also testified about the safeguards used to insure
that telephone calls are accurately recorded, including a proprietary software
encryption program.  Using the disc that Quam identified, Bishop
demonstrated how the laser phone platform could authenticate the accuracy of a
digitally-recorded inmate telephone call.

The State then recalled Brent, who identified appellant=s voice on two
telephone calls on the disc.  At the beginning of each call, a message
indicated that it may be recorded or monitored.  In one of the calls,
appellant admitted that he stabbed Brent, but claimed that he acted in
self-defense.  Over appellant=s objection, the
trial court admitted the disc as State=s Exhibit 12, and
at least part of the disc was played to the jury.[2] 


Appellant=s defense suggested that Brent=s former boyfriend committed the
assault.  In support of this theory, appellant recalled Brent and
introduced two Houston Police Department offense reports documenting Brent=s complaints against the former
boyfriend.

At the close of evidence, appellant requested a jury
instruction on the law of illegally-obtained evidence, pursuant to Texas Code
of Criminal Procedure 38.23.  The trial court denied the request.

 

The jury found appellant guilty of aggravated assault as charged
in the indictment and answered yes to the special issue concerning use of a
deadly weapon.  At the conclusion of the punishment phase, the jury found
three enhancement paragraphs alleging sequential felonies true and assessed
punishment at confinement for life and a fine of $10,000.

II.  Issues Presented

Appellant presents four issues for our review.  In his
first two issues, he challenges the legal and factual sufficiency of the
evidence to support his conviction of aggravated assault with a deadly
weapon.  In his third issue, he contends that the trial court erred in
admitting recordings of telephone calls he made from the jail.  In his
fourth issue, he contends that the trial court erred in denying his request for
an instruction under Texas Code of Criminal Procedure article 38.23(a) that the
jury disregard illegally obtained evidence.

III.  Analysis

A.  Legal and Factual Sufficiency of the
Evidence

In his first and second issues, appellant contends the evidence
is legally and factually insufficient to support his conviction for aggravated
assault with a deadly weapon.  When reviewing the legal sufficiency of the
evidence, we do not ask whether we believe that the evidence at trial
established guilt beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318B19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).  Rather,
we examine the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Id.
at 319, 99 S. Ct. at 2789; Mason v. State,
905 S.W.2d 570, 574 (Tex. Crim. App. 1995).

 

When reviewing the factual sufficiency of the evidence, we
view all the evidence in a neutral light and set aside the verdict Aonly if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.@  Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (quoting Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)).  Before we may
reverse for factual insufficiency, we must first be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury=s verdict.  Watson v. State,
204 S.W.3d 404, 417 (Tex.
Crim. App. 2006).  When reviewing the evidence, we must avoid intruding on
the factfinder=s role as the sole judge of the weight and credibility
of the witnesses= testimony.  Johnson v. State,
23 S.W.3d 1, 9 (Tex.
Crim. App. 2000).  We do not re-evaluate the credibility of the witnesses
or the weight of the evidence, and will not substitute our judgment for that of
the factfinder.  Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim.
App. 1998). 

A person commits aggravated assault if he commits assault
and (1) causes serious bodily injury to another or (2) uses or exhibits a
deadly weapon during the commission of the assault.  Tex. Penal Code Ann. ' 22.02(a) (Vernon Supp. 2006); Ferrel v. State, 55 S.W.3d 586,
589 (Tex.
Crim. App. 2001).  ASerious bodily injury@ is Abodily injury that
creates a substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.@  Tex.
Penal Code Ann. ' 1.07(a)(46) (Vernon Supp. 2006); Ferrel, 55 S.W.3d
at 590.  A deadly weapon is A(A) a firearm or
anything manifestly designed, made, or adapted for the purpose of inflicting
death or serious bodily injury; or (B) anything that in the manner of its use
or intended use is capable of causing death or serious bodily injury.@  Tex. Penal Code Ann. ' 1.07(a)(17) (Vernon Supp. 2006).

In the present case, the court=s charge required
the jury to find the defendant guilty if it found from the evidence that
appellant Adid intentionally or knowingly cause serious bodily
injury to Brenda Brent by cutting her with a knife.@  Thus, both the indictment and the
application paragraph of the aggravated assault charge indicate that appellant
committed the aggravated assault by causing serious bodily injury, rather than
by using or exhibiting a deadly weapon.  The jury charge, however, also
included a special issue on use of a deadly weapon.  See Tex. Code Crim. Proc. Ann. art. 42.12, ' 3g(a)(2) (Vernon 2006). 

 

Appellant appears to direct his legal sufficiency challenge
to the evidence that he used a knife, not to evidence that the weapon used was
a deadly weapon or to evidence that he caused serious bodily injury.  In
his factual sufficiency challenge, he refers briefly to evidence regarding his
use of a knife, but focuses primarily on evidence regarding serious bodily
injury.  The nature of appellant=s complaint is not
entirely clear, but we address the legal and factual sufficiency of the
evidence regarding (1) the type of weapon, (2) whether it was a deadly
weapon, and (3) whether appellant caused serious bodily injury.

1.      
Evidence that the Weapon was a Knife  

Although Brent testified that she never actually saw the
knife and initially thought that appellant hit her with his fist, she knew that
he was using a knife when he stabbed her in the side of her neck.  The
treating paramedic, who had nine years= experience and
had responded to over one hundred calls for critical care, had no doubt that a
knife caused Brent=s wounds, and testified that her wounds
were consistent with the use of a large-bladed knife.  Finally, in one of
the recorded telephone calls, appellant stated, AI ended up
stabbing her.  She cut my hand, pulled a knife on me.@

Appellant, however, points to the absence of any reference
to a knife in the paramedic=s report, to the paramedic=s lack of a
medical degree, and to Brent=s admission that she did not see a
knife.  But these aspects relate to the weight of the evidence and the
credibility of the witnesses, and such matters are for the jury to
decide.  See Johnson, 967 S.W.2d at 412.  Assuming without
deciding that the State had to prove that the weapon was a knife, we conclude
the evidence is legally and factually sufficient to do so.

2.       ADeadly Weapon@  

 

Knives are not necessarily deadly weapons under subsection
(A) of Texas Penal Code section 1.07(a)(17).  See Lafleur v. State,
106 S.W.3d 91, 95 (Tex. Crim. App. 2003); Thomas v. State, 821 S.W.2d
616, 619B20 (Tex. Crim.
App. 1991) (en banc).  Factors to consider in determining whether the
knife qualified as a deadly weapon under subsection (B) include (1) the
size, shape, and sharpness of the knife; (2) the manner in which appellant used
the weapon; (3) the nature of any inflicted wounds; (4) testimony concerning
the knife=s life‑threatening capabilities; and (5) the
words appellant spoke.  See Thomas, 821 S.W.2d at 619; Tisdale
v. State, 686 S.W.2d 110, 111 (Tex. Crim. App. 1984) (en banc).  Both
expert testimony and lay testimony may be independently sufficient to support a
deadly weapon finding.  English v. State, 647 S.W.2d 667, 668B69 (Tex. Crim.
App. 1983) (en banc).  It is not necessary for the weapon to be introduced
into evidence.  See Morales v. State, 633 S.W.2d 866, 868 (Tex.
Crim. App. 1982).

In the present case, the paramedic testified that Brent=s wounds were
consistent with the use of a large-bladed knife.  Appellant used the knife
to inflict multiple wounds on Brent, including one near the jugular vein and
one near her spine.  Moreover, the paramedic testified that her injuries
were the kind that can cause death if not treated, and  Brent testified
that appellant said he wanted her to die.  Appellant, however, does not
direct our attention to any evidence weighing against the finding that he used
a deadly weapon.  

After reviewing the record under the applicable standard of
review, we conclude the evidence is legally and factually sufficient to support
the deadly weapon finding.  See Walters v. State, 37 Tex. Crim. 388, 389, 35
S.W. 652 (1896) (holding nature of wounds sufficient to establish pocketknife
as a deadly weapon).

3.       ASerious Bodily
Injury@  

Serious bodily injury is bodily injury plus one or more of
the following effects: (1) a substantial risk of death, (2) death, (3)
serious permanent disfigurement, (4) protracted loss of the function of any
bodily member, (5) protracted impairment of the function of any bodily member,
(6) protracted loss of the function of any bodily organ, or (7) protracted
impairment of the function of any bodily organ.  Moore v. State,
739 S.W.2d 347, 355 (Tex. Crim. App. 1987) (en banc) (Clinton, J.,
concurring).  Whether an injury constitutes Aserious bodily
injury@ must be
determined on a case‑by‑case basis.  See id. at 352.

 

In his factual insufficiency argument, appellant contends
the evidence is insufficient because there was no testimony from a doctor
regarding the severity of Brent=s injuries.  In support of this
argument, he cites Williams v. State, 696 S.W.2d 896 (Tex. Crim. App.
1985) (en banc).  In Williams, the Court of Criminal Appeals
criticized the lack of evidence of serious bodily injury, in part, as follows:

The complainant stayed in the hospital less than two
days.

No testimony was offered as to the seriousness of
appellant=s injuries except for the
introduction of hospital records by the custodian thereof.  As discussed
above, these records indicate that no transfusion was necessary, that two
bullet wounds and one Ahole@ were found on the complainant, they indicate that
no surgery was performed, and that two bullets were left lodged in the
complainant.

No testimony, expert or non‑expert, was
offered suggesting that the complainant had suffered either a substantial risk
of death or a serious permanent disfigurement or protracted loss or impairment
of the function of any bodily member or organ.

. . .

The evidence presented by the State is not
sufficient to prove serious bodily injury.  The complaining witness never
testified to the extent of his injuries, nor was any evidence shown in the
medical records that those injuries created a substantial risk of death, or
caused death, permanent disfigurement, or protracted loss or impairment of the
functions of any bodily member or organ.  No testimony, whatsoever, was
offered to prove serious bodily injury.

 

Id. at 897B98 (citation
omitted).

 

Williams is readily distinguishable.[3] 
In the present case, Brent testified to the extent of her injuries and
demonstrated that, by the time of trial, she still did not have use of the
fingers of her right hand and could not walk.  Her testimony is evidence
of the Aprotracted loss or
impairment of the functions@ of her legs and the fingers of her right
hand.  In addition, the attending paramedic testified that Brent=s injuries were
the kind that can cause death if not treated, and medical records indicate
injury to the spine and a two-week hospital stay.  

We conclude the evidence is legally and factually sufficient
to support appellant=s conviction and therefore overrule
appellant=s first two issues.

B.  Admission of Recorded Telephone Conversations

In his third issue, appellant challenges the trial court=s admission of
certain recordings of telephone calls appellant made from the county
jail.  He argues that the recordings (1) were not properly authenticated
and (2) were inadmissible under Texas Code of Criminal Procedure article 38.22
because they contained statements made as a result of custodial interrogation.[4]

We review a trial court=s admission of
evidence for abuse of discretion.  Weatherred v. State, 15 S.W.3d
540, 542 (Tex. Crim. App. 2000); Ford v. State, 179 S.W.3d 203, 210
(Tex. App.CHouston [14th Dist.] 2005, pet. ref=d), cert.
denied, ___U.S. ___, 127 S. Ct. 281 (2006).  The test for abuse of
discretion is not whether, in the opinion of the reviewing court, the facts
present an appropriate case for the trial court=s action; rather,
it is a question of whether the trial court acted without reference to any
guiding rules or principles.  Hernandez v. State, 53 S.W.3d 742,
750 (Tex. App.CHouston [1st Dist.] 2001, pet. ref=d).  To
preserve a complaint for appeal, an appellant=s objection at
trial must comport with his objection on appeal.  See Ramirez v. State,
815 S.W.2d 636, 646 (Tex. Crim. App. 1991) (en banc). 

 

1.       Authentication  

Appellant argues, in part, that the recordings Alacked
authenticity and integrity.@  In the trial court, he objected on
the ground of Aimproper authentication pursuant to Rule 901 of the
Texas Rules of Evidence@ because Brent could identify only
appellant=s voice, and not the other voice, on the recording.

Rule 901 provides in relevant part:

(a)     General Provision. 
The requirement of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a finding that the
matter in question is what its proponent claims.

(b)     Illustrations.  By
way of illustration only, and not by way of limitation, the following are
examples of authentication or identification conforming with the requirements
of this rule:

(1)     Testimony of witness
with knowledge.  Testimony that a matter is what it is claimed to be.

. . .

(5)     Voice
identification.  Identification of a voice, whether heard firsthand or
through mechanical or electronic transmission or recording, by opinion based
upon hearing the voice at anytime under circumstances connecting it with the
alleged speaker.

. . .

(9)     Process or system. 
Evidence describing a process or system used to produce a result and showing
that the process or system produces an accurate result.

 

Tex. R. Evid. 901.

 

In the present case, Officer Quam identified State=s Exhibit 12 as
the disc containing digital recordings of telephone calls appellant made. 
Using this exhibit, Bishop demonstrated how the recording system authenticates
the accuracy of a digitally recorded inmate telephone call.  Finally,
Brent identified appellant=s voice as one of the voices on the
recordings.  We therefore conclude the recordings were properly
authenticated.  See Angleton v. State, 971 S.W.2d 65, 67B68 (Tex. Crim.
App.1998) (en banc) (applying Rule 901(b)(1), (4), and (5) to hold audiotape
properly authenticated).  It was not necessary for Brent to identify both
voices to establish that the digital recording was what the State claimed it to
be.  See Jones v. State, 80 S.W.3d 686, 689 (Tex. App.CHouston [1st
Dist.] 2002, no pet.) (stating court is unwilling to read into Rule 901 a
requirement that each person, no matter how irrelevant to case, be identified
by name).

2.      
Purported Custodial Interrogation and Improper Admission under Article 38.22  

Appellant also argues that the trial abused its discretion by
admitting the recorded calls because the recordings are purportedly the product
of custodial interrogation and do not meet the requirements of article 38.22,
section 3 of Texas Code of Criminal Procedure.[5] 
Although appellant presented the trial court with an objection under article
38.23, the record is devoid of any indication that he objected under article
38.22.  Thus, he has not preserved this objection.  See Tex. R. App. P. 33.1 (a)(1)(A)
(requiring complaint be made with sufficient specificity to make trial court
aware of complaint, unless specific grounds were apparent from context); Turner
v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991) (en banc) (stating
point of error on appeal must correspond to objection made at trial).

 

Even if we were to assume that appellant preserved a
complaint under article 38.22, his argument is without merit.  Appellant=s telephone
conversation, although made while in custody, did not constitute custodial
interrogation.  See State v. Scheineman, 77 S.W.3d 810, 813 (Tex.
Crim. App. 2002) (en banc) (observing that no custodial interrogation occurred
when the defendant=s custodial statement was not made in
response to interrogation by law enforcement personnel but instead was made
when the defendant was alone with a co‑defendant).

We conclude the trial court did not abuse its discretion in
admitting the recordings of appellant=s telephone
conversations and therefore overrule appellant=s third issue.

C.  Denial of Appellant=s Request for an
Article 38.23(a) Instruction

In his fourth issue, appellant contends the trial court
erred by failing to instruct the jury, pursuant to Texas Code of Criminal
Procedure article 38.23, to disregard the recordings because they were
allegedly obtained in violation of the law.  Article 38.23 provides in
part:  ANo evidence obtained . . . in violation of . . . [the]
laws of the State of Texas . . . shall be admitted in evidence against the
accused on the trial of any criminal case.@  Tex. Code Crim. Proc. Ann. art.
38.23(a) (Vernon 2005).  This statute further provides:

In any case where the legal evidence raises an issue
hereunder, the jury shall be instructed that if it believes, or has a
reasonable doubt, that the evidence was obtained in violation of the provisions
of this Article, then and in such event, the jury shall disregard any such
evidence so obtained.

 

Id.

The question is whether, under the facts of a particular
case, the evidence raises an issue requiring a jury instruction.  Graham
v. State, 201 S.W.3d 323, 331 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d) (citing Murphy v. State, 640
S.W.2d 297, 299 (Tex. Crim. App. 1982)).  When the evidence raises no such
issue, the trial court acts properly in refusing a request to charge the jury
with this instruction.  Id. (citing Murphy, 640 S.W.2d at
299).

 

In the present case, appellant argues that recording his
telephone conversations from the jail violated Texas Penal Code section 16.02,
relating to interception of wire, oral, or electronic communication.  See
Tex. Penal Code Ann. ' 16.02 (Vernon
Supp. 2006).  Section 16.02(b)(1) provides, AA person commits
an offense if the person . . . intentionally intercepts, endeavors to
intercept, or procures another person to intercept or endeavor to intercept a
wire, oral, or electronic communication.@  Id. '
16.02(b)(1).  An affirmative defense, however, exists when Aa person acting
under color of law intercepts . . . a wire, oral, or electronic communication .
. . if one of the parties to the communication has given prior consent to the
interception.@  Id. ' 16.02(c)(3)(A).

At trial, appellant argued that, because the prompts and
postings inform inmates only that their calls Amay,@ rather than Ashall,@ be recorded and
monitored, inmates cannot be said to have consented to the recording.  On
appeal, however, he relies on testimony indicating that inmates are not asked
whether they consent to the recording and do not consent to the recording in
writing.[6]

 

Although we have found no published Texas case directly on
point, the Wisconsin Court of Appeals in State v. Riley confronted
similar facts and argument and applied substantively identical law to conclude
that such recording did not violate that state=s electronic
surveillance law.  704 N.W.2d 635, 641 (Wis. App. 2005).  As in the
present case, a telephone prompt notified an inmate that his call may be
recorded.  Id. at 637.  As in the present case, the defendant
focused on the fact that the telephone announcement stated only that the call Amay@ be
recorded.  Id. at 639.[7] 
Finally, the Wisconsin statute, like the Texas statute, provides that an
individual acting under of color of law may lawfully intercept wire, oral, or
electronic communications when one of the parties to the communication
consented to the interception.  Id. at 638; see Wis. Stat. ' 968.31(2)(b)
(2005-06) (stating that it is not unlawful under the Wisconsin Electronic
Surveillance Control Law for Aa person acting under color of law to
intercept a wire, electronic or oral communication, where . . . one of the
parties to the communication has given prior consent to the interception@); see also
18 U.S.C.A. ' 2511(2)(c) (West 2000) (AIt shall not be
unlawful under this chapter for a person acting under color of law to intercept
a wire, oral, or electronic communication, where . . . one of the parties to
the communication has given prior consent to such interception.@).

The Wisconsin appellate court first referred to a series of
federal cases in which courts  interpreting comparable federal law
concluded that an inmate gives implied consent to electronic surveillance when
he is on notice that his telephone call is subject to monitoring and recording
and nevertheless continues with the call.  See Riley, 704 N.W.2d at
639 (citing cases).  The court concluded:

We therefore hold that so long as an inmate is given
meaningful notice that his or her telephone calls over institutional phones are
subject to surveillance, his or her decision to engage in conversations over
those phones constitutes implied consent to such surveillance.  Meaningful notice may include . . . a
monitoring notice posted by the outbound telephone, or a recorded warning that
is heard by the inmate through the telephone receiver, prior to his or her
making the outbound telephone call. 

 

Riley received the requisite meaningful notice.  Prior to phone
calls placed from the jail telephones, the inmates hear the SBC announcement. 
The announcement warns inmates that the call Amay be recorded.@  The fact that the announcement contains the
permissive modal auxiliary verb Amay@ rather than the obligatory modal auxiliary verb Awill@ is of no
consequence.  By using the permissive Amay,@ the
announcement does not, as Riley suggests, merely inform inmates that the jail
has the Acapability@ to
record telephone calls; it also raises the possibility that the jail would
proceed to record the calls.  Such noticeCa prerecorded message played over the telephone system informing
inmates that outgoing calls are subject to surveillanceCis sufficient to hold that an inmate has impliedly
consented to monitoring or recording.

 

Id. at 640B41 (footnote and citations omitted).

We are persuaded by the reasoning in Riley and the
federal cases cited therein.  It is undisputed that appellant=s telephone
conversations contained a prompt indicating that calls may be recorded or
monitored.  It is also undisputed that postings throughout the jail
informed the inmates that their calls may be monitored or recorded.  We
therefore hold that, under the circumstances presented here, appellant
impliedly consented to the recording of his telephone conversations. 
Consequently, the recording did not violate Texas Penal Code section
16.02.  See Tex. Penal Code
Ann. ' 16.02(c)(3)(A).  

The trial court did not abuse its discretion by denying
appellant=s request for an instruction under Texas Code of
Criminal Procedure article 38.23(a).  Accordingly, we overrule appellant=s fourth issue.

IV.  Conclusion

Having overruled appellant=s four issues, we
affirm the judgment of the trial court.

 

 

 

 

/s/     
Eva M. Guzman

Justice

 

 

 

 

Judgment rendered
and Opinion filed May 31, 2007.

Panel consists of Justices
Frost, Seymore, and Guzman.

Publish C Tex. R. App. P. 47.2(b).














[1]  On cross-examination, Quam stated that inmates
are not asked for their written consent to the recording of their telephone
calls.





[2]  Appellant objected to this evidence Aunder article 38.23 of the Texas Code of Criminal
Procedure@ because the evidence allegedly was obtained in
violation of Texas Penal Code section 16.02 dealing with unlawful interception
of wire, oral, or electronic communications.  He also raised objections to
the evidence on relevance, hearsay, authentication, and best evidence grounds.





[3]  Appellant also cites Villarreal v. State, apparently to
suggest that Brent=s injuries were comparable to those
held not to constitute serious bodily injury.  See Villarreal, 716 S.W.2d 651, 652 (Tex. App.CCorpus Christi 1986, no pet.).  In Villarreal, the victim sustained a
bruise and lacerations to his face, and two fractured ribs.  Id.  The
appellate court concluded evidence of the victim=s inability to raise his arms for two weeks caused by the pain of the
two fractured ribs, and the fractured ribs themselves, were insufficient to
show that appellant caused Aserious bodily
injury.@  Id.  In the present case, Brent
incurred injuries such that she was unable to use her legs and one hand, at a
minimum, for almost a year after the assault.  Villarreal is
neither comparable nor controlling. 





[4]  In his third issue, appellant also alludes
briefly to an alleged violation of Texas Penal Code section 16.02, relating to
electronic surveillance.  Because appellant develops this argument only in
the context of his fourth issue, we discuss the argument in connection with
that issue.





[5]  Section 3 provides in part:

(a)       
No oral or sign language statement of an accused made as a result of custodial
interrogation shall be admissible against the accused in a criminal proceeding
unless:

(1)       
an electronic recording, which may include motion picture, video tape, or other
visual recording, is made of the statement;

(2)       
prior to the statement but during the recording the accused is given the
warning in Subsection (a) of Section 2 above and the accused knowingly,
intelligently, and voluntarily waives any rights set out in the warning;

(3)       
the recording device was capable of making an accurate recording, the operator
was competent, and the recording is accurate and has not been altered;

(4)       
all voices on the recording are identified; and

(5)       
not later than the 20th day before the date of the proceeding, the attorney
representing the defendant is provided with a true, complete, and accurate copy
of all recordings of the defendant made under this article.

Tex. Code Crim. Proc. Ann. art. 38.22 '
3(a) (Vernon
2005).





[6]  The State argues that the telephone calls in
question are not the kind of communication to which section 16.02 applies and
suggests the telephone calls are Aoral
communication,@ rather than Awire@ or Aelectronic
communication.@  The State also argues that 16.02 does not apply
to these telephone calls because persons making calls over the inmate telephone
system do not have a legitimate expectation of privacy in the content of their
calls.  See Tex. Code Crim. Proc.
Ann. art. 18.20 ' 1(2) (Vernon Supp. 2006) (defining oral communication
as Aan oral communication uttered by a person exhibiting
an expectation that the communication is not subject to interception under
circumstances justifying that expectation,@
and excluding Aan electronic communication@ from the term=s
definition).  Given our conclusion regarding consent, we do not consider
the State=s argument.





[7]  The defendant in Riley also argued that
there was no evidence he actually heard the telephone announcement.  Id. at 639.