**Jay L. MURPHY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 114–82.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 27, 1982.

---

Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty., Gilbert P. Howard, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

The jury found appellant guilty of aggravated robbery and assessed punishment at fifty (50) years' confinement and a fine of $5,000.00. The conviction was reversed by the Dallas Court of Appeals in an unpublished per curiam opinion. We granted the State's petition for discretionary review in order to review the said Court of Appeals' holding that the trial court erred in overruling the appellant's written objection and refusing to submit to the jury a requested instruction pursuant to Article 38.23, V.A.C.

C.P., regarding the search and seizure in question.

During the trial, the court conducted a hearing in the jury's absence on appellant's "motion to suppress" the evidence found during a search of the house of appellant's aunt. Such evidence consisted of a pair of shoes, pants, a belt and a shirt covered with fresh blood.[1]

Dallas police officer Wesley King, the only witness at said hearing, stated on the date of the offense he was looking for a man named Jay L. Murphy as a result of a police broadcast. The record showed that prior thereto appellant Murphy's billfold was found by the police in the victim's home and it contained his name and address. King went to the address reported and was met at the door of the house by a woman who identified herself as appellant's aunt, Glodene Blaylock. King advised Blaylock the police were looking for appellant and believed appellant lived at the address. She replied he had been there earlier. When King inquired if she objected to him coming in and looking for appellant, Blaylock replied, "Not at all." He considered her as being very cooperative. Blaylock told King the house was hers but that appellant lived there with her. King then began his search.

In the den King observed a large couch. He looked under it to see if appellant was hiding there. Under the couch he discovered the shoes, pants, belt and the shirt which were the subject of the motion to suppress. King testified Blaylock remained cooperative during the search and never withdrew her consent.

At the conclusion of the hearing, the court overruled the suppression motion. The clothing was subsequently admitted into evidence.

In the presence of the jury, King testified he had Blaylock's consent to search. Appellant's hearsay objection was sustained, and the jury instructed to disregard the answer. King did testify he did not have a search

---

1. The record shows that during the course of the aggravated robbery there was an attempt to rape the victim and she was hit in the head with a hammer causing blood to flow. The clothing found was similar to that worn by the individual committing the alleged crime.

warrant, but did not believe he needed a warrant after talking to Blaylock, that he would have secured one if he had felt it was necessary or the right thing to do.

During King's interrogation by the prosecution, the State attempted to present evidence as to the legality of the search. Each time the court sustained appellant's objection of hearsay. The State was unable to show that Blaylock consented to the search or that she was the owner of the house and appellant's aunt, etc. It is clear from the record that the appellant thus prevented any fact issue arising before the jury concerning the legality of the search during King's interrogation. King was the only witness, State or defense, who testified before the jury as to the search and its fruits.

Appellant, testifying in his own behalf before the jury, stated he lived in his aunt's house and that the shoes, pants, belt and shirt in question were his. He explained the blood as coming from his nose which he bloodied during a football game. He did not know how his billfold got into the victim's house, but claimed he lost it some three weeks before the alleged offense.

Article 38.23, V.A.C.C.P., provides:

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

"In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."

▋ The terms of the statute are mandatory, and when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly. The only question is whether under the facts of a particular case an issue has been raised by the evidence so as to require a jury instruction. See *Jordan v. State,* 562 S.W.2d 472 (Tex.

Cr.App.1978); *Hernandez v. State,* 600 S.W.2d 793 (Tex.Cr.App.1980). Where no such issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury. *Jordan v. State,* supra; *Stein v. State,* 514 S.W.2d 927 (Tex.Cr.App. 1974); *Fisher v. State,* 493 S.W.2d 841 (Tex. Cr.App.1973). See also *Gaffney v. State,* 575 S.W.2d 537, 542, 543 (Tex.Cr.App.1978).

In *Rose v. State,* 470 S.W.2d 198 (Tex.Cr. App.1971), this court wrote:

"No witness was called by the appellant to controvert the testimony of the officers. The cross-examination did not raise a fact issue on the right to arrest. Therefore, the court did not err in refusing the charge."

In a hearing in the absence of the jury in the instant case, the court determined that the search and seizure were legal and the fruits of the search were admissible.

▋ King then testified as to the search and its fruits in the jury's presence. His testimony was uncontroverted, and there were no other witnesses offered as to the search. When the State attempted to show the basis of the legality of the search through King, the appellant blocked such efforts with hearsay objections which the court sustained. While the answers sought to be elicited were hearsay, it should be remembered that hearsay is admissible on the issue of probable cause to arrest or search or to show consent to search. *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Hutchinson v. State,* 509 S.W.2d 598 (Tex.Cr.App.1974); *Adams v. State,* 552 S.W.2d 812 (Tex.Cr. App.1977).

▋ As we view it, the interrogation of King did not raise an issue as to the legality of the search. The court did not err in overruling appellant's objection to the court's charge.

Insofar as it may be argued that the State failed to demonstrate before the jury the basis of the legality of the search, the appellant is estopped to complain. He elected to prevent any disputed fact issue

from coming before the jury. See and compare *Ex parte Guerrero,* 521 S.W.2d 613 (Tex.Cr.App.1975); *McGee v. State,* 486 S.W.2d 942 (Tex.Cr.App.1972); *Cadd v. State,* 587 S.W.2d 736 (Tex.Cr.App.1979); *Holmes v. State,* 140 Tex.Cr.R. 619, 146 S.W.2d 400 (1940); 5 Tex.Jur.2d, Appeal and Error—Criminal, § 409; 5 Am.Jur.2d, Appeal and Error, §§ 713–719.

We are reinforced in our decision that the court did not err in overruling appellant's objection to the charge by the fact that the appellant testified on direct examination that the fruits of the search were his and that he lived in his aunt's house. When an accused testifies on direct examination he possessed the fruits of the search, he normally waives any contention concerning the legality of the search. *Stein v. State,* 514 S.W.2d 927 (Tex.Cr.App.1974); *Sims v. State,* 502 S.W.2d 730 (Tex.Cr.App. 1973); *Hunnicutt v. State,* 500 S.W.2d 806 (Tex.Cr.App.1973); *Creel v. State,* 493 S.W.2d 814 (Tex.Cr.App.1973); *Moulton v. State,* 486 S.W.2d 334 (Tex.Cr.App.1971); *Palmer v. State,* 475 S.W.2d 797 (Tex.Cr. App.1972).[2]

In *Womble v. State,* 618 S.W.2d 59, 62 (Tex.Cr.App.1981), this court wrote:

"When a defendant offers the same testimony as that objected to, or the same evidence is introduced from another source, without objection, the defendant is not in a position to complain on appeal."

The judgment of the Court of Appeals is reversed and the cause is remanded to said court for consideration of appellant's remaining grounds of error.

ROBERTS and CLINTON, JJ., concur in the result.

TEAGUE, J., concurs in the result, see *Smyth v. State,* 634 S.W.2d 721 (Tex.Cr. App.1982).

---

**2.** We do not .find that appellant's testimony was offered solely to "meet, destroy or explain" so as to bring into play a corollary to the rule discussed above. See *Nicholas v. State,* 502 S.W.2d 169 (Tex.Cr.App.1973);

*Thomas v. State,* 572 S.W.2d 507 (Tex.Cr.App. 1976) (Opinion on State's motion for rehearing); *Sherlock v. State,* 632 S.W.2d 604 (Tex. Cr.App.1982) (footnote # 1).