TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00178-CR







Tracie Blankenship, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY


NO. 2C97-3623, HONORABLE JOHN BARINA, JR., JUDGE PRESIDING








 Appellant Tracie K. Blankenship was convicted of driving while intoxicated and
sentenced to 180 days in county jail, probated for 18 months, and fined $1500, of which $750 is
probated. She contends the trial court should have suppressed her intoxilyzer test result because
she initially refused to take the test and because it was administered following a citizen's arrest she
believes was illegal. She also contends the trial court should have given a jury instruction on her
contention that her arrest was illegal. We will affirm the judgment.

 The citizen who arrested Blankenship, Jedidah Boyd, first saw Blankenship at a
stoplight in an adjacent car. She said she saw Blankenship drink out of a flask-like glass bottle,
but did not know what was in the flask. Boyd drove on and parked in front of her friend's house. 
As Boyd got out of her car, Blankenship drove into the rear of Boyd's car. Blankenship used a
mobile phone in her own car, but then got out and stumbled to Boyd's friend's house to ask to use
their phone. Before they could get the phone to her, Blankenship stumbled back to her car,
bumping into it before getting in. Boyd said Blankenship appeared intoxicated. 

 When the police arrived and administered field sobriety tests, Boyd watched as
Blankenship had difficulty walking one foot in front of the other or standing on one foot. Boyd
admitted she did not see the line Blankenship was attempting to walk and was never close enough
to smell her breath. She also did not see whether Blankenship was injured in the collision. Boyd's
only previous exposure to field sobriety tests was by watching the television show "Cops."

 The police officers did not arrest Blankenship for DWI based on their observations. 
Officer Kevin Tramp was first on the scene. He approached Blankenship in her car, and smelled
the odor of alcohol coming from her car. He believed her car was driveable. He asked her about
her condition. Based on their brief conversation, he did not believe she was intoxicated, but called
for another officer to investigate more thoroughly because the witnesses believed she was
intoxicated. Officer Jim Hatfield, who conducted the field sobriety tests, including a horizontal
gaze nystagmus test, believed Blankenship's performance on all the tests showed intoxication. He
said she stumbled so badly toward the street during the walking tests that he feared for her safety
and discontinued the tests. He also smelled a strong odor of alcohol on her breath. Because he
believed her intoxication made her dangerous to herself and others, he stated he knew he could
have arrested her for public intoxication. Police department policy prevented him from arresting
her for DWI because he had not seen her while she was driving. The officers did not find an open
container of alcohol in the car, but did find a Listerine bottle. (Blankenship's daughter testified
that Blankenship had her tongue pierced shortly before the accident. As a result, Blankenship was
taking painkilling medication and had to rinse her mouth out with Listerine to prevent infection.)

 The police officers asked if Boyd would like to make a citizen's arrest for DWI. 
Boyd had never made a citizen's arrest before, but agreed to make this one because she thought
Blankenship was intoxicated and had seen her drive in that condition.

 The police took Blankenship to the police station where they administered the
sobriety tests again, this time on videotape. They requested she submit to an intoxilyzer
examination to test the level of alcohol in her breath. She at first declined and signed a DIC-24
test refusal form. The police turned off the videotape and filled out forms for a minute or two
without conversation. During this period, Blankenship changed her mind and decided to take the
intoxilyzer test. It showed she had .235 grams of alcohol per 210 liters of breath. The statute
defines intoxication as above .10 grams per 210 liters of breath. Tex. Penal Code Ann. § 49.01
(West 1994).

 Blankenship's three points of error emanate from the admission of the intoxilyzer
test results. By two points, she contends the trial court should have suppressed the result of the
test because the citizen's arrest was improper and because she initially refused to submit to the
test. By her third point, she contends the trial court should have submitted her requested
instruction that jurors should disregard all evidence derived from an illegal arrest or illegal
seizure. 

 We review the denial of the motion to suppress against a two-tiered standard. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.1997). If a trial court's decision on a
mixed question of law and fact turns on an evaluation of credibility and demeanor, we will defer
almost completely to that decision. Id. If, however, the trial court's decision on a mixed question
of fact and law does not turn on an evaluation of credibility and demeanor, we may review the
decision de novo. Id.

 A non-police officer may without a warrant arrest an individual for a misdemeanor
offense when that individual commits a breach of the peace. Tex. Code Crim. Proc. Ann. art.
14.01(a) (West 1977); Heck v. State, 507 S.W.2d 737, 740 (Tex. Crim. App.1974). Driving
while intoxicated is such a breach of the peace. Romo v. State, 577 S.W.2d 251, 253 (Tex. Crim.
App. 1979); Heck, 507 S.W.2d at 740. The right of a private citizen to make a warrantless arrest
for a breach of the peace committed in his view is limited to the time the offense is committed or
while there is danger of its renewal. Woods v. State, 213 S.W.2d 685, 688 (Tex. Crim. App.
1948).

 We conclude that Boyd had probable cause to arrest Blankenship for DWI. A
person commits DWI by operating a motor vehicle in a public place while intoxicated. Tex. Penal
Code Ann. § 49.04 (West 1994). Intoxication is defined either by alcohol concentration or as "not
having the normal use of mental or physical faculties by reason of the introduction of alcohol, a
controlled substance, a drug, a dangerous drug, a combination of two or more of those substances,
or any other substance into the body." Id. at 49.01(2). Boyd saw Blankenship drive into a car
parked on a public street. Boyd saw her stumbling while walking before the police arrived, then
saw her wobbling and stumbling while attempting to perform the field sobriety tests. She saw her
use a phone in her car, ask for a phone from the house, leave before the house phone arrived, and
bump into her own car while walking. Boyd had grounds to believe that Blankenship did not have
normal use of her mental or physical faculties by reason of ingestion of some substance and that
she posed a danger to herself or others.

 Even if Boyd lacked probable cause to arrest Blankenship for DWI, the police could
have arrested Blankenship. A peace officer may arrest without a warrant any person who commits
an offense in his presence or within his view. Tex. Code Crim. Proc. Ann. art. 14.01(b) (West
1977). A person commits public intoxication by appearing in a public place while intoxicated to
the degree that she may endanger herself or another. Tex. Penal Code Ann. § 49.02 (West 1994). 
Officer Hatfield saw Blankenship intoxicated in public and determined that she had access to her
car; he also had been told she had driven that car into a parked car. He saw her stumbling so
badly that he thought she was in danger of walking out into the street. These facts provide a basis
for him to determine she was a danger to herself or others; taken together, the facts support a
warrantless arrest for public intoxication. See Elliott v. State, 908 S.W.2d 590, 592 (Tex.
App.--Austin 1995, pet. ref'd). Once she was properly in custody they could request she take the
intoxilyzer test to confirm the suspicion of intoxication. See id. at 593.

 The citizen's arrest was legal. Even if it were not, the police were entitled to arrest
her. In either case, the arrest does not provide a basis on which to suppress the intoxilyzer test. 
We overrule point one.


 Blankenship's initial refusal to take the test did not bar the police from
administering the test when, without any prompting or persuasion by police, she changed her mind
and consented to the test. Though in her appellate brief she describes as "incredible" the
testimony that she simply changed her mind, the record lacks support for that critical description. 
She relies on the statutory provision that "a specimen may not be taken if a person refuses to
submit to the taking of a specimen designated by a peace officer." Tex. Transp. Code Ann.
§ 724.013 (West 1998). A change of mind wrought by police pressure does not constitute valid
consent. State v. Schaeffer, 839 S.W.2d 113, 117 (Tex. App.--Dallas 1992, pet. ref'd). This
record, however, lacks any evidence of police pressure. Neither the statute nor Schaeffer bars a
person from voluntarily rescinding her refusal to submit to the test. If a person can rescind the
invocation of her constitutional right to remain silent, she surely can revoke her statutory right not
to take a breath test. See Dinkins v. State, 894 S.W.2d 330, 352 (Tex. Crim. App. 1995); see also
Trevino v. State, 815 S.W.2d 592, 619 (Tex. Crim. App. 1991) (no violation of rights when
defendant invoked right to silence and counsel, then initiated conversation and confessed to police
officer), rev'd on other grounds, 503 U.S. 562, 567-68 (1992) (remanded for consideration of
challenge to strikes of minority jury panelists). The only evidence in the record before us is that,
moments after signing the refusal form, without any urging by police, Blankenship changed her
mind and agreed to take the breath test. The court did not abuse its discretion by refusing to
suppress the breath test. We overrule point two.


 Blankenship contends by point three that the trial court should have instructed the
jury to ignore evidence resulting from an illegal seizure. She contends the "seizure" of her breath
was illegal if her arrest was illegal. She argues that the evidence raised a fact issue regarding
probable cause because Boyd did not smell alcohol on her breath nor was she able to make an
independent determination of probable cause. The defendant is entitled to a jury instruction in
any case in which the legal evidence raises an issue regarding whether evidence was obtained in
violation of any constitutional or statutory provision; in such a case, "the jury shall be instructed
that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the
provisions of this Article, then and in such event, the jury shall disregard any such evidence so
obtained." Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 1998). She is not entitled to
an instruction when the evidence does not show an issue of disputed material fact. Murphy v.
State, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982). If the facts are not disputed, the decision
of whether the facts provided probable cause to arrest is one for the court, not for the jury. See
Rose v. State, 470 S.W.2d 198, 200 (Tex. Crim. App. 1971); McGlothlin v. State, 854 S.W.2d
190, 192 (Tex. App.--Fort Worth 1993, pet. ref'd). 

 Blankenship was not entitled to the instruction. The only evidence shows that her
breath was "seized" with her consent. As discussed under point of error one, Blankenship's arrest
was legal because there is no dispute about the facts showing her intoxication. Even if Boyd
should not have arrested her for DWI, the police clearly were within their right to arrest
Blankenship for public intoxication. The fact that the first officer did not think she was intoxicated
does not create a fact issue because his opinion was not based on Blankenship's performance in
the field sobriety tests. The trial court did not err by rejecting the requested instruction. We
overrule point of error three.

 We affirm the judgment of conviction.



 

 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: February 11, 1999

Do Not Publish



R WP="BR2">
 Blankenship's initial refusal to take the test did not bar the police from
administering the test when, without any prompting or persuasion by police, she changed her mind
and consented to the test. Though in her appellate brief she describes as "incredible" the
testimony that she simply changed her mind, the record lacks support for that critical description. 
She relies on the statutory provision that "a specimen may not be taken if a person refuses to
submit to the taking of a specimen designated by a peace officer." Tex. Transp. Code Ann.
§ 724.013 (West 1998). A change of mind wrought by police pressure does not constitute valid
consent. State v. Schaeffer, 839 S.W.2d 113, 117 (Tex. App.--Dallas 1992, pet. ref'd). This
record, however, lacks any evidence of police pressure. Neither the statute nor Schaeffer bars a
person from voluntarily rescinding her refusal to submit to the test. If a person can rescind the
invocation of her constitutional right to remain silent, she surely can revoke her statutory right not
to take a breath test. See Dinkins v. State, 894 S.W.2d 330, 352 (Tex. Crim. App. 1995); see also
Trevino v. State, 815 S.W.2d 592, 619 (Tex. Crim. App. 1991) (no violation of rights when
defendant invoked right to silence and counsel, then initiated conversation and confessed to police
officer), rev'd on other grounds, 503 U.S. 562, 567-68 (1992) (remanded for consideration of
challenge to strikes of minority jury panelists). The only evidence in the record before us is that,
moments after signing the refusal form, without any urging by police, Blankenship changed her
mind and agreed to take the breath test. The court did not abuse its discretion by refusing to
suppress the breath test. We overrule point two.


 Blankenship contends by point three that the trial court should have instructed the
jury to ignore evidence resulting from an illegal seizure. She contends the "seizure" of her breath
was illegal if her arrest was illegal. She argues that the evidence raised a fact issue regarding
probable cause because Boyd did not smell alcohol on her breath nor was she able to make an
independent determination of probable cause. The defendant is entitled to a jury instruction in
any case in which the legal evidence raises an issue regarding whether evidence was obtained in
violation of any constitutional or statutory provision; in such a case, "the jury shall be instructed
that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the
provisions of this Article, then and in such event, the jury shall disregard any such evidence so
obtained." Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 1998). She is not entitled to
an instruction when the evidence does not show an issue of disputed material fact. Murphy v.
State, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982). If the facts are not disputed, the decision
of whether the facts provided probable cause to arrest is one for the court, not for the jury. See
Rose v. State, 470 S.W.2d 198, 200 (Tex. Crim. App. 1971); McGlothlin v. State, 854 S.W.2d
190, 192 (Tex. App.--Fort Worth 1993, pet. ref'd). 

 Blankenship was not entitled to the instruction. The only evidence shows that her
breath was "seized" with her consent. As discussed under point of error one, Blankenship's arrest
was legal because there is no dispute about the facts showing her intoxication. Even if Boyd
should not have arrested her for DWI, the police clearly were within their right to arrest
Blankenship for public intoxication. The fact that the first officer did not think she was intoxicated
does not create a fact issue because his opinion was not based on Blankenship's performance in
the field sobriety tests. T