COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-361-CR
 
GENE LEE NEWTON                                                               
APPELLANT
A/K/A GENE NEWTON
V.
THE STATE OF TEXAS                                                               
STATE
------------
FROM THE 372
ND DISTRICT COURT OF
TARRANT COUNTY
------------
MEMORANDUM OPINION(1)
------------
I. Introduction
Appellant Gene Lee Newton, a/k/a Gene
Newton, ("Newton") was charged with possession of a controlled
substance of one gram or more, but less than four grams, namely cocaine, and
repetition. Following a trial, a jury found Newton guilty as charged in the
indictment and the trial court assessed punishment at seven years' imprisonment.
In a single point, Newton complains that the trial court erred by refusing to
include a requested article 38.23 instruction in the jury charge. See
Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon Supp. 2003). We will affirm.
II. Background Facts
Fort Worth Police Officer Matthew Weber
was on bicycle patrol in the downtown area on March 5, 2002. While riding
through the courtyard of the Ripley Arnold housing community, Weber heard
"extremely loud," "thumping noise like a boom box or radio"
and went to investigate. About a block away on West Bluff, Weber noticed a
parked car "that was basing or had the music turned up real loud," so
he rode up to the car and stopped beside the driver's side window, which was
open. Weber approached Newton's car because the music coming from the car stereo
was so loud that it violated the city noise ordinance prohibiting "[a]ny
unreasonably loud, disturbing, unnecessary noise which causes material distress,
discomfort or injury to persons of ordinary sensibilities in the immediate
vicinity . . . ." A man and woman were making out in the front seat of the
car; Weber dismounted his bike and waited for the couple to notice him,
intending to tell them to turn the music down. However, before the couple
noticed his presence, Weber saw that the man in the driver's seat--later
identified as Newton--was holding a clear cellophane wrapper containing a
rock-like substance that Weber immediately recognized as crack cocaine.
Newton finally noticed Weber, quickly
turned down the car stereo, and closed his hand around the small cellophane
package. Weber called for backup and, as Newton lowered his closed hand toward
his leg, reached inside the car and grabbed Newton's arm. The two struggled
briefly, but Weber succeeded in freeing the cellophane-wrapped substance from
Newton's grasp. Newton was placed under arrest, and subsequent testing showed
that the rock-like substance confiscated from Newton contained more than one
gram but less than four grams of cocaine.
Newton's girlfriend, Charlette Wright,
offered a different version of events leading up to Newton's arrest. She
testified that the car radio was on when she and Newton initially pulled into
the parking lot, but said that it was not loud; in fact, she testified that the
car radio was already turned off by the time Weber approached the car. According
to Charlette, she and Newton had been sitting in the parked car talking for
about twenty minutes when Weber approached from the passenger side, came around
the front of the car to the driver's side, and asked Newton for his license and
proof of insurance. She testified that Newton asked Weber why he wanted the
information and handed the officer his identification, when Weber reached inside
the car, "grabbed for something," and began struggling with Newton.
Charlette testified that she felt she could have left when Weber approached the
car, and did not think she was being detained, but she felt like she was
"being done wrong" because Weber was "messing with [them] for no
reason."
Newton requested that an article 38.23
instruction be included in the jury charge to the effect that, if the jury
believed that no noise ordinance violation was in progress when Weber approached
Newton's vehicle, then the jury must disregard any evidence obtained as a result
of that investigative detention. The trial court denied Newton's request.
III. Standard of Review
Appellate review of error in a jury charge
involves a two-step process. Abdnor v. State, 871 S.W.2d 726, 731 (Tex.
Crim. App. 1994). Initially, we must determine whether error occurred. If so, we
must then evaluate whether sufficient harm resulted from the error to require
reversal. Id. at 731-32. Error in the charge, if timely objected to in
the trial court, requires reversal if the error was "calculated to injure
[the] rights of the defendant," which means no more than that there must be
some harm to the accused from the error. Tex. Code Crim. Proc. Ann.
art. 36.19 (Vernon 1981); see also Abdnor, 871 S.W.2d at 731-32; Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In
other words, a properly preserved error will call for reversal as long as the
error is not harmless. Almanza, 686 S.W.2d at 171. In making this
determination, "the actual degree of harm must be assayed in light of the
entire jury charge, the state of the evidence, including the contested issues
and weight of probative evidence, the argument of counsel and any other relevant
information revealed by the record of the trial as a whole." Id.; see
also Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).
IV. Law and Application to
Facts
In his sole point, Newton complains that
the trial court erred by refusing to include the requested article 38.23
instruction in the jury charge. The State asserts that the trial court did not
err by refusing to submit the requested charge to the jury because the evidence
does not raise an issue regarding the legality or constitutionality of Officer
Weber's actions leading up to the discovery of the cocaine and Newton's arrest.
Article 38.23 provides in pertinent part
that:

        
 No evidence obtained by an officer or other person in violation of any
 provisions of the Constitution or laws of the State of Texas, or of the
 Constitution or laws of the United States of America, shall be admitted in
 evidence against the accused on the trial of any criminal case.
 In any case where the legal evidence
 raises an issue hereunder, the jury shall be instructed that if it believes,
 or has a reasonable doubt, that the evidence was obtained in violation of the
 provisions of this Article, then and in such event, the jury shall disregard
 any such evidence so obtained.

Tex. Code Crim. Proc. Ann. art. 38.23.
Thus, an article 38.23(a) instruction is only required if there exists a factual
dispute regarding whether evidence was obtained in violation of the constitution
or laws of the United States or of the State of Texas. Where no such issue is
raised by the evidence, the trial court does not commit error by refusing to
include an article 38.23(a) instruction in the charge. Murphy v. State,
640 S.W.2d 297, 299 (Tex. Crim. App. 1982).
Newton argues that the requested article
38.23 instruction should have been given because Officer Weber and Newton's
girlfriend provided contradictory testimony about the volume of the car radio
that led Weber to approach Newton's car to investigate a possible noise
ordinance violation. Essentially, Newton claims that because his girlfriend
testified that the car radio was not loud, Officer Weber's approach and ultimate
discovery of cocaine in plain view in Newton's hand is entirely suspect,
possibly violated the constitution or laws of the United States or of this
state, and necessitated an article 38.23 instruction.
We find no cause to doubt the legality or
constitutionality of Weber's actions in this case. "There is no legitimate
expectation of privacy . . . shielding that portion of the interior of an
automobile which may be viewed from outside the vehicle by either inquisitive
passersby or diligent police officers." Texas v. Brown, 460 U.S.
730, 740, 103 S. Ct. 1535, 1542 (1983). Here, Weber simply approached Newton's
car as it sat parked in a public place and looked in the open driver's side
window. No investigative stop occurred, and Weber did not detain Newton until
after he saw the crack cocaine wrapped in cellophane pinched between Newton's
fingers. Accord Merideth v. State, 603 S.W.2d 872, 873 (Tex. Crim. App.
[Panel op.] 1980) (holding that no investigative stop occurred when officer
approached pickup parked in public lot, and that marijuana was lawfully obtained
after the officer knocked on the pickup's driver's side window, then smelled
marijuana and saw a hand-rolled cigarette in the ashtray when the driver opened
door). Like any other citizen in a public place, Weber was free to approach
Newton's vehicle and observe anything in plain sight, including the cocaine in
Newton's hand. See Brown, 460 U.S. at 740, 103 S. Ct. at 1542 (noting
that "there is no reason [the police officer] should be precluded from
observing as an officer what would be entirely visible to him as a private
citizen."). Newton's argument on appeal fails because contradictory
testimony about the status of Newton's car radio--on or off, loud or soft--does
not affect our conclusion; Weber was "in a location where he had a legal
right to be," was justified in his visual scan of Newton's car, and
properly seized the cocaine after seeing it in plain view in Newton's grasp. See
Merideth, 603 S.W.2d at 873.
Having reviewed the record on appeal, we
conclude that the evidence does not raise a fact issue regarding the legality of
Officer Weber's discovery of the cocaine in Newton's hand. Accordingly, we hold
that no instruction was required under article 38.23 of the code of criminal
procedure, and that there was no error in the jury charge. We overrule Newton's
sole point.
V. Conclusion
Having overruled Newton's point, we affirm
the trial court's judgment.
 
                                                                      
PER CURIAM
 
PANEL F: WALKER, DAY, and LIVINGSTON, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: August 26, 2003


1.See Tex. R. App. P. 47.4.