Affirmed and Memorandum Opinion filed April 3, 2008








Affirmed and Memorandum Opinion filed April 3, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00308-CR

_______________

 

DONNIE RAY ACHAN, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 232nd District Court 

Harris County, Texas

Trial Court Cause No. 1070784 

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

A jury
convicted appellant Donnie Ray Achan, Jr. of burglary of a habitation and,
after finding two enhancement paragraphs true, sentenced him to 50 years
confinement in the Institutional Division of the Texas Department of Criminal
Justice.  In two issues, appellant contends that the trial court erred by (a)
admitting his oral confession in violation of his Miranda rights,[1]
and (b) denying his requested jury charge regarding his arrest.  We affirm.








 

I.  Factual and Procedural Background

Appellant was indicted for the felony
offense of burglary of a habitation on August 2, 2006.  Immediately before the
beginning of his trial on April 9, 2007, a hearing was held on appellant=s motion to suppress his oral
statements.  At this hearing, the Houston Police Department (AHPD@) arresting officer, Roger Mahoney,
and appellant testified.  At the outset of the hearing, the State stipulated
that appellant=s arrest was made without a warrant.

At the suppression hearing, Officer
Mahoney, a 22-year veteran with HPD, testified that he was dispatched in
response to a burglary in progress call to a home located at 3431 McIlhenny
Street[2] in Houston. 
A witness to the burglary had called 911 and reported that two individuals had
entered the residence and were still inside when the call was made.  The
witness described the suspects as two black males, one wearing a blue shirt and
pants, the other wearing blue pants and a white shirt.  When Mahoney arrived at
the home, the suspects had left the scene, so Mahoney set up what he described
as a Aperimeter@ and contacted the home owner. 
According to Mahoney, it appeared that the suspects had entered the house
either through a pried-open window in front or through a window in back where
an air conditioning unit had been removed.  After receiving confirmation from
the home owner that no one had been authorized to enter the home, he remained
at the scene to complete his offense report in case the suspects returned to
the scene.   








As Mahoney was completing his offense
report, a neighbor approached his police car and informed Mahoney that he had
called in the anonymous report on behalf of a witness.  Mahoney testified that
he knew this individual and believed him to be a reliable and credible person.
According to Mahoney, he told this individual to contact him if he discovered
any other information.  Shortly thereafter, the neighbor contacted Mahoney on
Mahoney=s cell phone and informed him that
the suspects were walking back towards the burglarized residence on a
cross-street, Canfield Street.  Mahoney moved his vehicle to Canfield Street,
keeping the McIlhenny residence in sight, and saw two black males, who matched
the descriptions of the suspects given to him in the dispatch, approaching the
McIlhenny house.

When Mahoney saw these suspects, they
Adiverted@ and went towards the rear of a
vacant residence with a vacant apartment building behind it on Canfield
Street.  One of the suspects, however, made eye contact with Mahoney, so
Mahoney motioned this suspect over to his vehicle to question him.  This
suspect, identified as James Judy, approached Mahoney=s vehicle.  According to Mahoney, he
asked Judy why he had been in the house on McIlhenny, and Judy replied that Athey@ had gone in the house to get some Atrinkets and whatnot@ and that it was a vacant residence. 
Mahoney asked him what he did with the Atrinkets and whatnot@; Judy pulled a velvet bag out of his
pocket with a few small items in it.[3]  While Judy
was pulling the bag out of his pocket, he also indicated to Mahoney that the other
male suspect, identified by Mahoney as appellant, had been inside the house
with him.  Mahoney testified that he performed an Aofficer safety pat down@ on Judy and put him in the back seat
of his patrol car, and called appellant over so he could speak with him.








Mahoney stated that he met appellant
outside of his vehicle in the driveway of a vacant residence.  Mahoney asked
appellant why he had been in the house, pointing to the house on McIlhenny. 
Appellant said that Athey@ had taken some Awhatnots@ out of the vacant residence. 
According to Mahoney, appellant also stated that they had taken the articles
down to ABremond Street@ and sold them for some crack
cocaine.  According to Mahoney, appellant was not in handcuffs, Mahoney had his
weapon holstered while speaking with appellant, and he never indicated to
appellant that appellant was under arrest.  Sometime during his conversation
with appellant another police unit arrived at the scene.  Mahoney testified
that he informed the other police unit that the two suspects, Judy and
appellant, had admitted being in the house, but that Mahoney had not spoken to
the witness.  Mahoney stated that the other unit went to the witness=s residence and brought her back to
the scene.  The witness identified appellant and Judy as the men she had seen
entering the house on McIlhenny.  According to Mahoney, he then placed
appellant in the back seat of his patrol car with Judy.  

On cross-examination, Mahoney
testified that he would not have let appellant go until he Aat least got his name@ from him.  He further stated, AI wasn=t going to let him leave until I knew
that he was one of the persons in the house.@  Mahoney admitted that he did not
read either appellant or Judy his Miranda rights before questioning
them.  Mahoney further stated, AIn fact they weren=t under arrest in my mind until the
lady that owned the residence came and identified the bag and the rings and
stated to me that they were kept in the center of the residence.  At that point
I figured there was enough probable cause to arrest them and contact the DA to
see if charges would be appropriate.@  Finally, Mahoney stated, AI wouldn=t have let [appellant] go until he
was either identified or not identified by the complainant.@








Appellant then testified at the
hearing on the motion to suppress.  According to appellant, he was on his way
to perform his job as a groundskeeper at the apartment building on Canfield
Street on the morning of his arrest.  Appellant stated that the building was
not vacant, and he worked for the owner cleaning up and taking care of the
apartments.  According to appellant, Mahoney appeared Aout of nowhere@ with Judy in the back of his car. 
Appellant testified that Mahoney approached the building and asked AMs. Carolyn@ if AD Ray@[4] was there.  Appellant stated that
Mahoney asked him to identify the man in the back of his car, but when
appellant approached his car, Mahoney grabbed him and Aput [him] on top of the car.@  According to appellant, Mahoney
said he was arresting him for burglary of a house.  Appellant stated that
Mahoney pulled Judy out of the car and searched him, discovering a little bag. 
While Mahoney was searching Judy, he put appellant in the back seat.  Appellant
testified that Mahoney then put Judy back in the car and pulled appellant back
out and searched him.  Appellant denied telling Mahoney that he had taken some
trinkets from inside the McIlhenny house and testified that he did not believe
he could leave once Mahoney put him in the back of Mahoney=s patrol car.  He also stated that
Mahoney never read him his Miranda rights.  According to appellant, once
Mahoney put him and Judy in the  back seat of his patrol car, Mahoney drove
over to the McIlhenny house and sat outside talking on his cell phone for Aabout an hour or two.@  After sitting in the car with
Mahoney for this roughly two-hour period, appellant stated that another patrol
car pulled up.  Appellant testified that the complaining witness arrived at the
scene, and Mahoney gave her the property taken from Judy.  Then the complaining
witness Astuck it in her purse[,] jumped in
her van and got up on top of the freeway.@  

After
hearing the testimony of Mahoney and appellant, the trial court denied the
motion to suppress, without making any findings.  Appellant=s trial began immediately
thereafter.  Officer Mahoney testified to substantially the same information as
he provided during the hearing on the motion to suppress.  In addition, the
complainant in this case testified regarding the items that were stolen and the
state of her home when she arrived after the burglary.  The defense offered no
witnesses, and both sides rested and closed.  Appellant requested an
instruction under Texas Code of Criminal Procedure article 38.23.  The trial
court denied appellant=s request.  After both the State and defense presented
closing argument, the case was submitted to the jury.  The jury found appellant
guilty as charged in the indictment and, after a punishment hearing, sentenced
him to 50 years confinement in the Institutional Division of the Texas
Department of Criminal Justice.  This appeal timely followed.








II.  Issues Presented

In his
first issue, appellant asserts that the trial court erred by admitting his
alleged oral confession taken in violation of his Miranda rights because
he was effectively under arrest when the officer elicited his statement.  In
issue two, appellant contends that the trial court erred by refusing to submit
a charge that would have required the jury to determine whether appellant was
under arrest or restraint at the time of the alleged confession.

III.  Analysis

A.        Motion to Suppress

Appellant filed a motion to suppress
oral statements in which he argued that he was in custody at the time he made
oral statements to Officer Mahoney at the scene.[5] 
He asserted that Ahe was the focus of the investigation by the officer; he was
undergoing custodial interrogation; [and] he was not afforded his Miranda
rights.@[6]  He requested a hearing on his
motion to suppress, which the trial court conducted immediately before his
trial began.

The trial court is the sole finder of
fact at a suppression hearing, and is therefore responsible for evaluating
witness testimony and credibility.  Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005) (en banc).  Accordingly, we afford great deference to a
trial court=s determination of historical facts.  Id.  Where, as here, no
written findings are stated or requested, we must uphold the ruling on any
applicable theory of law that is supported by the evidence when viewed in the
light most favorable to the trial court=s ruling.  State v. Kelly, 204
S.W.3d 808, 818B19 (Tex. Crim. App. 2006); State v. Ross, 32 S.W.3d
853, 855B56 (Tex. Crim. App. 2000) (en banc). 








An accused must generally be in
custody before he is entitled to Miranda warnings.  See Miranda,
384 U.S. at 444, 86 S. Ct. at 1612.  Article 38.22 of the Texas Code of
Criminal Procedure precludes the use of statements resulting from custodial
interrogation absent compliance with its procedural safeguards.  Tex. Code Crim. Proc. Ann. art. 38.22, ' 2 (Vernon 2005).  If a statement is
not the result of a custodial interrogation, neither Miranda nor article
38.22 requires its suppression.  See Miranda, 384 U.S. at 444, 86 S. Ct.
at 1612; Dowthitt v. State, 931 S.W.2d 244, 254B55 (Tex. Crim. App. 1996).  A person
is in custody when, A>under the circumstances, a reasonable
person would believe that his freedom of movement was restrained to the degree
associated with a formal arrest.=@  Herrera v. State, 241 S.W.3d
520, 525 (Tex. Crim. App. 2007) (quoting Dowthitt, 931 S.W.2d at 254). 
This inquiry includes an examination of all the objective circumstances
surrounding the questioning.  Id.  The Areasonable person@ standard presupposes an innocent
person, and the subjective intent of a police officer is irrelevant unless
communicated or manifested to the suspect.  Dowthitt, 931 S.W.2d at 254.


The Court of Criminal appeals has
identified four general situations that may constitute custody: 

(1) when the suspect is physically
deprived of his freedom of action in any significant way, (2) when a law
enforcement officer tells the suspect that he cannot leave, (3) when law
enforcement officers create a situation that would lead a reasonable person to
believe that his freedom of movement has been significantly restricted, and (4)
when there is probable cause to arrest and law enforcement officers do not tell
the suspect that he is free to leave. 








Id. at 255.  In the first three situations, the
restriction on freedom must be to the degree associated with an arrest, rather
than that involved in an investigative detention.  Id.   As to the
fourth situation, the officer=s knowledge of probable cause must be manifested to the
suspect.  Id.  AMoreover, given our emphasis on probable cause as a >factor= in other cases, situation four does
not automatically establish custody; rather, custody is established if the
manifestation of probable cause, combined with other circumstances, would lead
a reasonable person to believe that he is under restraint to the degree
associated with an arrest.@  Id.

In this case, the record supports the
trial court=s implicit finding that appellant was subject to an investigative
detention rather than subject to a custodial interrogation.  See, e.g.,
Baldwin v. State, 237 S.W.3d 808, 812 (Tex. App.CHouston [14th Dist.] 2007, pet.
granted) (noting that an investigative detention is justified when the
detaining officer Ahas specific articulable facts which, taken together with
rational inferences from those facts, lead him to conclude the person detained
is, has been, or soon will be engaged in criminal activity@ (citing Woods v. State, 956
S.W.2d 33, 38 (Tex. Crim. App. 1997) (en banc)); see also Mays v. State,
726 S.W.2d 937, 944 (Tex. Crim. App. 1986) (en banc) (holding that an officer=s conduct in handcuffing two men
found at the location of a robbery was reasonable under circumstances as
investigative detention).  The trial court apparently believed Mahoney=s testimony that he briefly detained
appellant in the driveway of the vacant apartment to investigate the burglary
complaint.  While Mahoney was investigating the burglary complaint, he did not
physically deprive appellant of his freedom in any significant way.  According
to testimony at trial, at the time the alleged oral confession was made,
appellant was neither handcuffed, told he was not free to leave, nor sitting in
the back of the patrol car. 

Appellant contends that (a) Mahoney
had probable cause for an arrest and (b) he was effectively under arrest when
the officer began to question him.  But Mahoney did not in any way indicate to
appellant that he had probable cause to arrest appellant; in fact, Mahoney did
not believe probable cause existed until the witness identified appellant as
one of the individuals seen entering the house and the complainant identified
the items Mahoney discovered in the possession of Judy as stolen from her
house.  Although appellant may have felt restricted in the presence of Mahoney,
under the circumstances his freedom of movement was not restrained to the
degree associated with a formal arrest. 








In light of this evidence, we
conclude that appellant=s statements made to Mahoney near the scene of the burglary
were not the product of a custodial interrogation.  Rather, the statements were
obtained as a result of an investigative detention.  Thus, these statements were
admissible in the absence of a Miranda warning, and the trial court did
not err in denying appellant=s motion to suppress.  We overrule appellant=s first issue. 

B.        Requested
Jury Instruction

Here, appellant sought to have the
following instruction included in the jury charge:

A person is arrested when he has been actually put under restraint or
taken into custody by an officer or person executing a warrant of arrest, or by
an officer or person arresting without a warrant.

No evidence obtained by an officer or other person in violation of any
provisions of the Constitution or the laws of the State of Texas or laws of the
United States of America, shall be admitted in evidence against the accused on
the trial of any criminal case.

Therefore, if you believe, or have a reasonable doubt, that the
Defendant, Donnie Ray Achan, was under arrest, as defined above, and that he
was not admonished of his constitutional rights, then you shall disregard any
statements he may have made to Officer R. L. Mahoney, and not take such
statements as evidence of his guilt in this case.

Article 38.23 of the Texas Code of
Criminal Procedure provides in part: ANo evidence obtained . . . in
violation of . . . [the] laws of the State of Texas . . . shall be admitted in
evidence against the accused on the trial of any criminal case.@ Tex.
Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005). This statute further
provides:

In any case where the legal evidence raises an issue
hereunder, the jury shall be instructed that if it believes, or has a
reasonable doubt, that the evidence was obtained in violation of the provisions
of this Article, then and in such event, the jury shall disregard any such
evidence so obtained.








Id.  The question is whether, under the facts of a
particular case, the evidence raises an issue requiring a jury instruction.  Graham
v. State, 201 S.W.3d 323, 331 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d) (citing Murphy v. State,
640 S.W.2d 297, 299 (Tex. Crim. App. 1982) (en banc)). When the evidence raises
no such issue, the trial court acts properly in refusing a request to charge
the jury with this instruction. Id. (citing Murphy, 640 S.W.2d at
299).  Thus, in the absence of conflicting testimony or evidence, there is no
requirement that the jury charge include an instruction pursuant to article
38.23.  Pickens v. State, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005) (en
banc).  

Here, the jury heard no evidence
during the guilt-innocence phase of trial that conflicted with Mahoney=s version of events.  Mahoney
testified that he detained appellant while he investigated the burglary to
determine if appellant was involved in the burglary.  Mahoney stated that he
did not arrest appellant until after the witness identified appellant and the
complaining witness identified objects in the other suspect=s possession.  The defense offered no
controverting evidence, but instead rested immediately after the State rested
its case.  Thus, appellant did not introduce any conflicting evidence during
his trial regarding the circumstances surrounding his detention and arrest.

Under
these circumstances, the trial court properly refused appellant=s request for an article 38.23
instruction.  Accordingly, we overrule appellant=s second issue.

IV.  Conclusion

Having
overruled each of appellant=s issues, we affirm the judgment of the trial court.

 

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum
Opinion filed April 3, 2008.

Panel consists of Justices Yates,
Guzman, and Lee.*

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct.
1602 (1966).





[2]  This street name is spelled AMclihenny@ in
the reporter=s record.





[3]  According to Mahoney, the complaining witness later
identified the bag and the items in it as her property.  





[4]  According to appellant, AD Ray@ is his
nickname.





[5]  In this motion, appellant also sought to suppress
statements he later made at the police station, but these statements were
neither discussed nor admitted during the suppression hearing or appellant=s trial.





[6]  See Miranda, 384 U.S. at 444, 86 S. Ct. at
1212.





* Senior Justice Norman Lee sitting by assignment.