# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00041-CR

**Teresa Perez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-10-301246, HONORABLE CLIFFORD BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Teresa Perez guilty of possession of less than one gram of methamphetamine. The court assessed a sentence of two years in state jail, suspended during a community supervision term of four years. On appeal, Perez complains that the trial court erred by failing to suppress evidence and by refusing to instruct the jury that it should disregard illegally obtained evidence. We affirm the judgment of conviction.

### Background

Austin Police Department Officer Joshua Griggers testified that he went to an Austin hotel in response to a call about credit-card abuse. The manager told him that an employee had found a trash bag full of credit-card verification forms that are kept whenever a hotel guest checks in. The forms contained credit cards, names, addresses, and other personal information that were not for unauthorized use. The bag also contained other forms associated with room 211. Joined by another officer, he went to room 211 and knocked on the door. The door opened to

reveal appellant, a man, and a woman called Heather. Griggers testified that he considered appellant "detained" the moment he saw her. Appellant told him that she was visiting Heather, who was going to give her a ride to her boyfriend's house. After appellant and the other room occupants went downstairs to talk with police, a search of the room turned up a variety of items, including a driver's license for Teresa White.

APD Officer Brent Magill testified that the officers and the room occupants went from room 211 to the parking lot near the police cars "to further our investigation into the involvement of these people, as well as the credit card scam." Magill said they began "speaking as far as more involvement" for a few minutes until the motel manager brought down a bag of credit card receipts and internet order forms found in room 211. Magill and others looked through the papers and found an internet purchase form from Best Buy that bore the name Theresa—a variant of appellant's first name—which Magill said further raised his suspicion about appellant's involvement in the credit-card abuse.

Magill said he then read appellant the *Miranda* warning because he realized that his questions would be more like an interrogation than an interview. He asked appellant if he could look in her purse "to either help exonerate her any further in her case with her involvement with it, or validate my suspicion more for involvement with it." He testified that he told appellant the following:

> I would like to go into your purse so that I can see if there's any credit card slips or other Internet purchase forms in your purse. And if there is none, then, okay, then that, like I said, helps exonerate you in this involvement. And she gave me permission to look in her purse. In fact, I believe her words were, you can look in it.

2

While searching the purse, Magill looked thoroughly for receipts but did not find any. Instead, he found separate envelopes with the name "Teresa" handwritten on them; inside one Magill found a syringe loaded with an off-colored, semi-clear fluid that he thought was heroin and inside the other he found a green substance he believed to be marijuana. Appellant stated that the marijuana was hers, but not the syringe. Later, testing revealed that the syringe contained methamphetamine.

On cross-examination, appellant introduced a written search consent form that lacked any identification or signature of the person consenting to be searched. Magill testified on redirect examination that the consent to search that he acted on was oral consent. He said he filled out information relevant to the case after a conversation with appellant.

The remaining two witnesses' testimony is not relevant to the issues raised on appeal.

## Discussion

Appellant challenges the denial of her motion to suppress the evidence gained from the search of her purse and the refusal to instruct the jury that they must disregard evidence obtained illegally.

### Motion to suppress

Appellant contends that the search of her purse was improper because the police detained her without reasonable suspicion and because her consent to search was not voluntary.

We review a suppression ruling giving almost total deference to the trial court's findings of fact, but conducting a de novo review of the court's application of law to those facts. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We must view the evidence in the light most favorable to the trial court's ruling. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). We must uphold

the trial court's ruling if it is reasonably supported by the record and is correct under any applicable legal theory, *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)—even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

A police officer may stop and briefly detain a person for investigative purposes if the officer, in light of his experience, has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. *See Terry v. Ohio*, 392 U.S. 1, 20 (1968); *Carmouche*, 10 S.W.3d at 328. "[R]easonable suspicion requires 'that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime.'" *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (quoting *Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992)). A reasonable suspicion means more than a mere hunch or non-specific suspicion of criminal activity. *Tanner v. State*, 228 S.W.3d 852, 855 (Tex. App.—Austin 2007, no pet.). The reasonableness of a temporary detention must be examined by considering the totality of the circumstances. *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). We look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by what it turns up. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963). An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Davis*, 947 S.W.2d at 240. Once the reason for the stop has been satisfied, the detention may not be used to fish for unrelated criminal activity. *Kothe v. State*, 152 S.W.3d 54, 63-64 (Tex. Crim. App. 2004).

Appellant notes Griggers's comment that she was not free to go the moment he laid eyes on her in Room 211. She argues that, while his subjective belief is not dispositive, it suggests that a reasonable person would not view the encounter as consensual. She contends that when

Griggers ordered the occupants out of the room and they complied, she was seized for Fourth Amendment purposes. She contends that she should have been released when she identified herself and her lack of connection to the room. She discounts the Best Buy receipt because it bore a different spelling of her name and did not have her last name.

We conclude, however, that the officers had reasonable suspicion to detain the occupants of the room temporarily based on the information available when they knocked on the door. A hotel employee had found a trash bag containing a mixture of sensitive credit-card information and documents tied to room 211, a combination that created a reasonable suspicion that some criminal activity was afoot involving the occupants of room 211. Appellant was one of three occupants of that room when police arrived. Although appellant claimed to be only visiting the room briefly, the circumstances justified a brief detention for inquiry. The subsequent arrival of the bag of receipts that included one from an internet purchase made by a credit card from "Theresa" provided sufficient articulable suspicion that appellant might be involved in the suspected credit-card abuse to warrant extension of the temporary detention. Viewing this evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not err by finding the detention reasonable.

Appellant also complains that her consent to the search was not voluntary. She argues that her detention and the officer's failure to tell her that she could refuse combine to show that her consent was not voluntary.

An officer is not required to expressly inform someone she is free to refuse consent to search her belongings because a request for consent to search indicates to a reasonable person that she has the right to refuse consent. *U.S. v Drayton*, 536 U.S. 194, 206 (2002). Typically, whether consent to a warrantless search is voluntary turns on questions of fact and is determined

5

from the totality of the circumstances. *See Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007). We review a finding of voluntary consent only for an abuse of discretion. *Id*. We must decide whether the evidence presented at the suppression hearing fairly supports the trial court's finding of voluntary consent clearly and convincingly. *Id*. We look at the totality of facts, including whether there were any threats or shows of force, how long the detention or questioning had lasted, whether police confiscated any items from the defendant, deprivation of food and sleep, and characteristics of the defendant like age, intelligence, and education. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973); *see also U.S. v. Mendenhall*, 446 U.S. 544, 557-58 (1980).

We conclude that the trial court did not abuse its discretion by finding that appellant's consent to search was voluntarily given. There were no threats or shows of force—only the knock on the door, the announcement that police were there, and the request[1] that the occupants leave the room and accompany the officers downstairs. The evidence indicated that only a few minutes passed—mostly devoted to verifying the occupants' self-identification—before appellant was asked for her consent to search. There is no evidence that police had confiscated anything from her or deprived her of food or sleep. Although she was not told she could decline consent, she had been Mirandized and made aware of her right to remain silent. According to Magill, she hesitated slightly before giving consent, which indicates some degree of awareness that declining was an option. Viewing the record in the light most favorable to the trial court's ruling, we cannot conclude that the trial court abused its discretion by concluding that the State showed by clear and convincing evidence that appellant's consent was voluntarily given.

We find no error in the denial of the motion to suppress.

---

[1] Appellant characterizes it as an "order" that they leave the room, but the only testimony is that Officer Griggers asked the occupants to leave.

**Instruction on illegally obtained evidence**

Appellant complains that the trial court erred by refusing to instruct the jury that they must disregard illegally obtained evidence. When an issue of fact is raised regarding the legality of the collection of evidence, a defendant has a statutory right to have the jury charged regarding its obligation to ignore illegally collected evidence. *See* Tex. Code Crim. Proc. art. 38.23(a); *see also Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982). There must be an affirmative contest—i.e. conflicting testimony or self-contradictory testimony—regarding a historical fact question, not merely a question of credibility. *Madden v. State*, 242 S.W.3d 504, 513-14 (Tex. Crim. App. 2007). To merit an article 38.23 instruction, the affirmatively disputed fact must be one that affects the determination of the issue concerning the legality of the evidence collection. *Id*. at 517.

Appellant requested an instruction regarding whether she consented to the search and whether that consent was voluntary. She contends that, because the existence of her consent turns on Magill's testimony, evidence questioning his credibility and reliability creates a fact question relevant to her consent. She cites the incomplete written consent form, its notations that she consented to a search of her person and that the consent was documented by audio and video, and the absence of her signature. She contends that the jury could infer that she consented to a search of her person and not the purse and that she refused to sign and did not give consent. She further contends that the failure of the patrol car video to show her or Magill and the poor quality of the audio contradicts Magill's checking of the audio/video box and calls into question his credibility.

7

All of appellant's challenges to Magill's credibility relate to something other than his testimony that appellant orally consented to the search of her purse.[2] These are at best tangential challenges to his credibility, not an affirmative contest of the particulars of his testimony that she consented. In *Madden*, the court illustrated what sort of evidence would put a fact into question such that an article 38.23 instruction was required:

> Here, for example, one issue was whether appellant exceeded the speed limit of 55 m.p.h. through a construction site, giving Officer Lily a reasonable suspicion to stop him. If Officer Lily testifies that appellant did speed and Witness Two (or appellant) testifies that he did not speed, this disputed factual issue must be submitted to the jury. If the jury finds that appellant did obey the speed limit and that Officer Lily was unreasonable in believing that he did not, then they may not consider the evidence obtained as a result of this unlawful detention. If, however, Officer Lily says that appellant did speed, and Witness Two (or appellant) says that he doesn't remember or doesn't know, there is no disputed fact to submit because there is no affirmative evidence of a factual conflict. Similarly, if Officer Lily testifies that appellant did speed, but the cross-examiner grills him, "Isn't it true that he really did obey the speed limit, you're wrong or you're lying?" there is no factual dispute unless Officer Lily admits, "Yes, that is true." The cross-examiner cannot create a factual dispute for purposes of an Article 38.23(a) instruction merely by his questions. It is only the answers that are evidence and may create a dispute. Even the most vigorous cross-examination implying that Officer Lily is the Cretan Liar does not raise a disputed issue. There must be some affirmative evidence of "did not speed" in the record before there is a disputed fact issue.

*Id*. at 513-14. The *Madden* opinion also discussed the defendant's contention that the trooper's videotape showed that he was not nervous, apparently contradicting the trooper's testimony that the

---

[2] The cases on which appellant relies for the proposition that credibility questions can merit an article 38.23 instruction are too factually and procedurally different from this case to control here. *See Reynolds v. State*, 848 S.W.2d 148, 149 (Tex. Crim. App. 1993) (driver's testimony about his speed contradicted officer's testimony about driver's speed, creating an affirmative contest concerning fact relied upon to support stop that led to seizure); *Berger v. State*, 104 S.W.3d 199, 203 (Tex. App.—Austin 2003, no pet.) (concluding that trial court did not deprive appellant of due process by instructing the jury consistent with 38.23).

8

driver's nervousness contributed to the trooper's reasonable suspicion of wrongdoing to continue the detention that led to the discovery of contraband. *Id.* at 515. The trooper testified that the defendant's hands were shaking tremendously and that his face was trembling. The video was not in the record before the court of criminal appeals, although the court noted that the trial court had viewed the videotape and concluded that it did not raise a disputed fact concerning the defendant's nervousness. *Id.* at 515-16. The court of criminal appeals opined that, "[o]nly if the video clearly showed that appellant affirmatively did not do something that Trooper Lily said that he did do, and the video clearly would have shown that conduct if it had occurred, would there be some affirmative evidence of a disputed historical fact." *Id*. at 516. In this case, there is no evidence that contradicts Magill's testimony that appellant orally consented to the search. None of the issues she cites regarding the written consent form or possible inferences to be drawn therefrom affirmatively contradict Magill's testimony that she orally consented to search her purse. Thus, under *Madden*, the trial court did not err by refusing to instruct the jury consistent with article 38.23.

## Conclusion

We affirm the judgment of conviction.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed: August 29, 2013

Do Not Publish

9