

# NUMBERS 13-13-00607-CR and 13-13-00608-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

COLE CANYON LOCKHART,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

### On appeal from the 424th District Court
### of Llano County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Memorandum Opinion by Justice Benavides**

By three issues on appeal, appellant Cole Lockhart asserts that (1) the trial court

erred in denying his motion to suppress evidence obtained from a search warrant; (2) the

trial court erred in denying his request for a jury instruction under article 38.23 of the

Texas Code of Criminal Procedure; and (3) the evidence is insufficient to sustain his

conviction for possession of methamphetamines.   We affirm.

## I.   BACKGROUND[1]

On April 5, 2012, Sheriff Bill Blackburn received a tip that an individual by the name of Allen Stone had purchased methamphetamines from Lockhart, and Stone subsequently died.   Acting on a tip, Llano County Sheriff Investigator Mark Burke, Deputy John Gillespie along with his canine partner Chack, Lieutenant Brad Evans, and Sheriff Bill Blackburn approached a travel trailer occupied by Lockhart located on the premises of Long's Fishing Camp[2] in Llano County.   The record shows that Sheriff Blackburn had previously spoken to Lockhart over the telephone regarding the investigation.

Investigator Burke testified that upon arriving at the travel trailer, his eyes, nose, and throat began to burn from an "ammonia" or "cat-urine type odor," and that based upon his training as a narcotics investigator, such a smell is "normally associated" with the manufacture of methamphetamines. Deputy Gillespie also experienced a similar reaction. Deputy Gillespie's canine, Chack, performed a "free air sniff" of the exterior front door of the travel trailer, and Chack alerted Deputy Gillepsie of a positive alert of narcotics.

Lockhart spoke with the sheriff's investigators outside of the trailer.   The Investigators asked Lockhart for his consent to search the travel trailer, but Lockhart refused.   After Lockhart refused, Investigator Burke inspected a 55-gallon drum

---

[1] This appeal was transferred from the Third Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through Ch. 46, 2015 R.S.).

[2] Long's Fishing Camp was described as a "recreation area that's frequented by lots of people from lots of different areas."

trashcan located in the front of the travel trailer. Inside of the trashcan, Investigator Burke found: (1) an empty container of Good Sense Iodine, which he testified is used in the manufacture of drugs; (2) coffee filters, which he testified is used in the manufacture of drugs to "filter substances out from other substances"; and (3) Wal-Finate, a cold tablet which contains pseudoephedrine, a common ingredient used in the manufacture of drugs. Investigator Burke testified that the iodine, coffee filters, and cold tablets were found together inside of a discarded Chicken Express bag located inside of the trashcan.

Using the information gathered at the scene, Investigator Burke subsequently applied for and received a warrant to search the travel trailer. After executing the search warrant on the travel trailer, investigators found, among other things: (1) a Marlin .22-caliber rifle; (2) a tool bag with chemicals in it; (3) glass pipes typically used for smoking methamphetamines; and (3) a substance weighing 0.27 grams that tested positive for methamphetamines.

The State indicted Lockhart for: (1) unlawful possession of a firearm by a felon, a third-degree felony, *see* TEX. PENAL CODE ANN. § 46.04 (West, Westlaw through Ch. 46, 2015 R.S.), enhanced by a prior felony conviction[3], *see id.* § 12.42(a) (West, Westlaw through Ch. 46, 2015 R.S.); and (2) possession of methamphetamine, a substance listed in Penalty Group 1, in an amount of less than one gram, a state-jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West, Westlaw through Ch. 46, 2015 R.S.). Lockhart pleaded not guilty and was tried before a jury on guilt-innocence, as well as on punishment. The jury found Lockhart guilty as charged for both offenses[4] and assessed

---

[3] At trial, Lockhart stipulated to his prior conviction for manufacture of a controlled substance, a first-degree felony. *See* TEX. PENAL CODE ANN. § 481.112(a), (d) (West, Westlaw through Ch. 46, 2015 R.S.).

[4] Appellate cause number 13-13-00607-CR is assigned to the unlawful possession of a firearm

punishment at ten years and one day imprisonment with the Texas Department of Criminal Justice—Institutional Division (TDCJ-ID) for the unlawful possession of a firearm by a felon conviction and two years' confinement with TDCJ-ID for the possession of methamphetamine conviction, both sentences to run concurrently. This appeal followed.

## II.  MOTION TO SUPPRESS

By his first issue, Lockhart contends that the trial court erred by denying his motion to suppress the evidence seized from the travel trailer.

### A. Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).  Motions to suppress are reviewed pursuant to a bifurcated standard under which the trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record.  *Johnson*, 414 S.W.3d at 192.  But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo.  *Id.* (citing *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

### B. Discussion

Lockhart bases his suppression argument solely on the grounds that the sheriff's

---

conviction, and appellate cause number 13-13-00608-CR is assigned to the possession of methamphetamine conviction.

4

investigators conducted an unlawful search upon his property prior to obtaining the warrant. Relying heavily on *Florida v. Jardines*, 133 S.Ct. 1409 (2013), Lockhart argues that the sheriff's investigators entered his property with the intent to search his premises in violation of the Fourth Amendment. *See id.* at 1417. Stated another way, the question before us is whether the sheriff's investigators' conduct in this case was an objectively reasonable search. The answer to this question depends upon whether the officers had an implied license to enter the area outside of Lockhart's travel trailer, which in turn depends upon the purpose for which they entered. *See id.* As noted in *Jardines*, "a police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do." *Id.* at 1416 (citing *Kentucky v. King*, 131 S.Ct. 1849, 1862 (2011)) (internal quotation).

In this case, the trial court's findings of fact shed some light on this inquiry. The trial court made the following relevant findings:

2. 'On April 5, 2012, an individual named Amanda Robinson reported to Llano County Sheriff's Office that Cole Lockhart . . . [was] cooking methamphetamine at the subject property. Amanda Robinson reported that she witnessed her friend, Allen Stone, purchase methamphetamine from the Defendant and Amanda Meager at the subject property on April 4, 2012.

3. On April 5, 2012 [Lockhart] contacted Llano County Sheriff . . . Blackburn by telephone regarding the death of Allen Stone which had occurred on April 5, 2012.

4. On April 5, 2012, at 10:45 p.m., Llano County Sheriff . . . Blackburn, together with other deputies, went to the subject property to speak with [Lockhart]. On arrival, [Lockhart] was not present. Sheriff Blackburn contacted [Lockhart] by cell phone and asked [Lockhart] to return to the subject property to talk. [Lockhart] arrived at the subject property approximately 10 minutes later.

5. [Lockhart] spoke with Sheriff Blackburn about the death of Allen Stone and about how [Lockhart] knew of individuals that were

5

selling narcotics to Allen Stone.

6. On arrival at the subject property at 11:30 p.m. Deputy John Gillespie detected a "cat urine" odor coming from the subject property causing his eyes, nose, and upper throat to burn slightly. Deputy Gillespie experienced the same symptoms and reaction on September 2, 2011, when deputies had located precursor chemicals and a finished batch of methamphetamine (later confirmed to contain methamphetamine by the DPS laboratory).

. . . .

10. When confronted with the information received by Amanda Robinson[,] [Lockhart] denied cooking or selling methamphetamine. At approximately 11:55 p.m. [Lockhart] declined to give consent to search the subject property stating that he did not occupy the travel trailer.

11. The owner of Long's Fish[ing] Camp and the travel trailer . . . told Sheriff Blackburn that [Lockhart] was the occupant of the travel trailer and had occupied the travel trailer for several days.

This record shows that Sheriff Blackburn and his deputies approached Lockhart's trailer with the purpose of investigating Stone's death and the dealing of drugs to Stone, and not to conduct a search of Lockhart's trailer. Upon his arrival at the trailer, Lockhart did not consent to the deputies' request to search the travel trailer, but did not ask the officers to leave either. Furthermore, Lockhart voluntarily spoke with Sheriff Blackburn about Stone's death and about individuals who may have sold drugs to Stone. Viewing this evidence in the light most favorable to the trial court's ruling, we conclude that the sheriff's investigators conducted an objectively reasonable search and did not enter Lockhart's property with the initial intent to search. Thus, the facts in this case are factually distinguishable from *Jardines*. Accordingly, the trial court did not err in denying Lockhart's motion to suppress. *See id.* at 1416–17. Lockhart's first issue is overruled.

6

## III.    ARTICLE 38.23 INSTRUCTION

By his second issue, Lockhart asserts that the trial court reversibly erred by denying his request for a jury instruction under article 38.23 of the code of criminal procedure.    *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West, Westlaw through Ch. 46, 2015 R.S.).

### A.    Standard of Review

Our first duty in analyzing a jury-charge issue is to decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).    If we find error, we then analyze that error for harm.    *Id.*    Preservation of charge error does not become an issue until we assess harm.    *Id.* (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)).

In assessing harm we first examine whether the defendant objected to the erroneous charge.    *Id.*    If the defendant did not object, "then he must show that the error was 'fundamental' and that he suffered 'egregious harm.'"    *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)).    The appellant must show "actual, rather than theoretical, harm."    *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008).    Some examples of egregious harm include those errors that "affect the very basis of the case," "deprive the defendant of a valuable right, or vitally affect a defensive theory."    *Id.* (internal quotations and citation omitted).    This particular standard is a "high and difficult standard which must be borne out of by the trial record."    *Reeves*, 420 S.W.3d at 816.

If, however, the defendant properly objected, then he will obtain relief if the record shows that he suffered "some harm."    *Id.*    This standard requires us to consider (1) the

jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors revealed by the record as a whole. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013).

**B.    Applicable Law**

A defendant's right to the submission of jury instructions under article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). The terms of the statute are mandatory, and when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly. *Id.* at 510 (internal citation omitted). The only question is whether under the facts of a particular case an issue has been raised by the evidence so as to require a jury instruction. *Id.* Where no issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury. *Id.* (citing *Murphy v. State,* 640 S.W.2d 297, 299 (Tex.Crim.App.1982)). Before a defendant is entitled to an article 38.23 instruction, (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining evidence. *Id.*

Without a genuine dispute about a material fact, the legality of the conduct is determined by the trial judge alone, as a question of law. *Id.* And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Id.* In other words, the disputed fact must be an essential one in deciding the lawfulness of the challenged conduct. *Id.*

8

## C.    Discussion

Here, Lockhart argues that disputed material facts existed at trial regarding whether access to Long's Fishing Camp by police was allowed despite a "No Trespassing" sign located on the front of the camp property.    We disagree.    There was no evidence that Lockhart owned the recreational fishing camp property that he alleges the sheriff's investigators trespassed on.    Furthermore, there is no disputed evidence to show that Lockhart sought to exclude the sheriff's investigators from his trailer or the fishing camp in general.    To the contrary, Lockhart engaged in conversation with Sheriff Blackburn near the travel trailer that he occupied without once asking Sheriff Blackburn or the other deputies to leave the premises.    Finally, the evidence is undisputed that Long's Fishing Camp is a "recreation area" that is frequented by the public who pay access fees to the property.    Deputy Burke testified that the "No Trespassing" sign was likely intended for individuals who wanted to fish on the camp without paying an access fee.

Based on the record, we agree with the trial court's conclusion that no genuine dispute about a material fact existed to challenge the legality of the sheriff's investigators' entrance onto Long's Fishing Camp, or the area around the trailer that Lockhart occupied. As a result, the trial court did not err in denying Lockhart's request for an article 38.23 jury instruction.    *See id.*    Because we find that no error exists, our analysis ends here.    *See Ngo*, 175 S.W.3d at 743.    Lockhart's second issue is overruled.

## IV.    SUFFICIENCY CHALLENGE

By his final issue, Lockhart asserts that the evidence is insufficient to sustain his conviction for possession of methamphetamines.

9

**A.    Standard of Review**

In reviewing sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.  *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).  In viewing the evidence in the light most favorable to the verdict, we defer to the fact-finder's credibility and weight determinations because the fact-finder is the sole judge of the witnesses' credibility and the weight to be given to their testimony.  *Brooks*, 323 S.W.3d at 899.  It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilty is warranted by the cumulative force of all incriminating evidence.  *Winfrey*, 393 S.W.3d at 768.

The elements of the offense are measured as defined by a hypothetically correct jury charge.  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  Such a charge is one that accurately sets out the law, is authorized by the charging instrument, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.  *Id.*  Under a hypothetically correct jury charge, Lockhart is guilty of possession of methamphetamines if he knowingly or intentionally possessed methamphetamines in an amount of less than one gram.  *See* TEX. HEALTH & SAFETY

CODE ANN. § 481.115(b).

**B.    Discussion**

Lockhart solely challenges the sufficiency of the evidence to sustain his conviction on the element of unlawful possession on the ground that he was not affirmatively linked to the methamphetamines found in the travel trailer.    We disagree.

To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband.    *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005).    Under the so-called "affirmative links" rule, whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Id.* (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).    Thus, when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.  *Id.* at 406 (internal citation and quotations omitted).

Courts have developed numerous non-exclusive factors to determine whether the evidence is sufficient to affirmatively link the accused to the controlled substance. These factors include whether: (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or had the right to possess the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused, or found on the same side of the vehicle as the accused was sitting; (5) the contraband was

11

found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to escape or flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.) (internal citations omitted). The number of factors is not as important as the logical force the factors have in establishing the elements of the offense. *Id.*

Here, Deputy Burke testified that a "named cooperating individual" had provided the Llano County sheriff's office with a tip that an individual who had died in the county the previous night had purchased methamphetamines from Lockhart. Tips such as this have been held to have sufficient probative value to establish an affirmative link between an accused and the contraband found in his home. *See Poindexter*, 153 S.W.3d at 409. Additionally, Deputy Burke further testified that Lockhart and Amanda Meager were the only individuals who had access to the trailer where the methamphetamines were found. *See Lassaint*, 79 S.W.3d at 740–41 (Factor Two). Once inside the trailer, sheriff's investigators found a duffle bag with an eyeglasses prescription issued to Lockhart, as well as parts to a chainsaw. The evidence also shows that Lockhart cut cedar trees for

landowners in the area. *See id.* (Factor Two). Furthermore, the evidence shows that the baggy of methamphetamines and a pipe used to smoke methamphetamines was seized from the "rafters" of the travel trailer. *See id.* (Factor One). Finally, Deputy Burke testified that a strong residual "cat urine" odor permeated the travel trailer, which indicated the manufacture of methamphetamines. *See id.* (Factor Six).

After considering all of the evidence in the light most favorable to the verdict, we determine that based on that evidence and reasonable inferences therefrom, a rational fact finder could have found that sufficient evidence affirmatively links Lockhart to the contraband to sustain his conviction for possession of methamphetamines. *See id.*; *see also Winfrey*, 393 S.W.3d at 768. We overrule Lockhart's third issue.

## V. Conclusion

We affirm the trial court's judgments.


GINA M. BENAVIDES,
Justice


Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
17th day of September, 2015.